UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BRIAN P. LOGARBO                                CASE NO. 5:22-CV-00831

VERSUS                                          JUDGE TERRY A. DOUGHTY

LOUISIANA STATE UNIVERSITY HEALTH               MAGISTRATE JUDGE HORNSBY
HEALTH SCIENCES CENTER ET AL

## SECOND AMENDED, SUPPLEMENTAL, AND RESTATED COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF AND DAMAGES, AND JURY REQUEST

NOW INTO COURT, through undersigned counsel, comes Petitioner, Brian P. Logarbo,

("**Dr. Logarbo**"), an individual of the full age of majority, who is domiciled in St. Tammany

Parish, Louisiana, and who respectfully represents as follows:

### THE PARTIES

1.

Named defendants herein are:

(a)    LOUISANA STATE UNIVERSITY HEALTH SCIENCES CENTER
       SHREVEPORT being the State of Louisiana through the Board of Supervisors of
       the Louisiana State University and Agricultural and Mechanical College (hereafter
       "**LSUHSC-S**"), a public medical school and medical facility doing business at 1501
       Kings Highway, Shreveport, Louisiana, and funded by the State of Louisiana,
       which may be served through Attorney General, Jeff Landry, 1885 North Third
       Street, Baton Rouge, Louisiana 70802;

(b)    Dr. Lauren Beal ("**Dr. Beal**"), a person of the full age of majority who, upon
       information and belief, is domiciled in Caddo Parish and may be served at 1023
       Provenance Pl Blvd, Shreveport, LA 71106;

(c)    Dr. Ryan Jones, ("**Dr. Jones**"), a person of the full age of majority who, upon
       information and belief, is domiciled in Caddo Parish and may be served at 1541

Kings Hwy, Shreveport, LA 71103;

(d)    Dr. Sara Adams, ("**Dr. Adams**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1023 Provenance Pl Blvd, Shreveport, LA 71106;

(e)    Dr. Yemisi Adesida, ("**Dr. Adesida**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1501 Kings Hwy, Shreveport, LA 71103;

(f)    Dr. Vinh Nguyen, ("**Dr. Nguyen**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1541 Kings Hwy, Shreveport, LA 71103;

(g)    Dr. Wanda Thomas ("**Dr. Thomas**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1541 Kings Hwy, Shreveport, LA 71103;

(h)    Dr. Amanda Callegan-Poche' ("**Dr. Poche**") a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1023 Provenance Pl Blvd, Shreveport, LA 71106;

(i)    M'Liss Sella ("**Ms. Sella**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1501 Kings Highway;

(j)    Leisa Oglesby ("**Ms. Oglesby**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1501 Kings Highway, Shreveport, Louisiana 71103;

(k)    Christine Cheney ("**Ms. Cheney**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1501 Kings Highway, Shreveport, Louisiana, 71103; and

(l)    Dr. Steven Bailey ("**Dr. Bailey**"), a person of the full age of majority who, upon information and belief, is domiciled in Caddo Parish and may be served at 1501 Kings Highway, Shreveport, Louisiana, 71103.

(collectively the "**Defendants**").

## JURISDICTION AND VENUE

2.

This Honorable Court has subject matter jurisdiction over the claims and controversies set forth herein pursuant to the United States Constitution, the Constitution of the State of Louisiana, and Article 2 of the Louisiana Code of Civil Procedure.

3.

This Honorable Court has personal jurisdiction over the Defendant pursuant to Article 6 of the Louisiana Code of Civil Procedure.

4.

This Honorable Court is a proper venue pursuant to Articles 73, 74, and 76.1 of the Louisiana Code of Civil Procedure.

## BACKGROUND

5.

In the spring of 2020, Dr. Logarbo entered into an Agreement for Post Graduate Training ("**Residency Agreement**") with Louisiana State University Health Sciences Center - Shreveport ("**LSUHSC-S**"). The residency began on or about July 1, 2020. The duration of the Residency Agreement was twelve months and expected to end on June 30, 2021.

6.

During his tenure at LSUHSC-S, Dr. Logarbo proved to be very competent in his profession and repeatedly performed his duties with a "patient first" mentality. While this behavior

is typically applauded in the medical setting, Dr. Logarbo's quickly learned that his meticulous care for his patients began to rub some of the staff the wrong way.

7.

Early on, Dr. Logarbo personally observed that members of LSUHSC-S' nursing staff delayed necessary medical care and/or provided improper care to various patients. In an attempt to better the patients' care, Dr. Logarbo spoke to these individuals. After these discussions (which apparently hurt the feelings of the nurses), Dr. Logarbo intentionally altered his communication style in an effort to meet the emotional needs of his colleagues and even voluntarily attended counseling to work on the same. Ironically, the nursing staff, who potentially endangered the lives or health of the patients, were not required to undergo any additional training themselves.

8.

Throughout his tenure at LSUHSC-S, Dr. Logarbo was asked by the program's director, Lauren Beal, MD ("**Dr. Beal**"), to attend weekly luncheons with her and Dr. Logarbo's colleagues. These meetings generally took place on Mondays at 12:00pm and contained educational videos.

9.

While Dr. Logarbo made every reasonable effort to attend these luncheons each week, there were occasions when he was required to miss some of the luncheons as Mondays were typically the busiest day of the week and often had the highest patient volume.  Initially, Dr. Beal claimed to understand that Dr. Logarbo was with patients, but later tried to use his absences to further her personal agenda to "target" him.

10.

Due to Dr. Logarbo's patient-first mentality, he frequently requested that Dr. Beal move the luncheons to a less demanding time slot.  Dr. Logarbo also made it clear he would continue to watch the videos even if the luncheon was not moved.  However, rather than supporting the needs of the patients, Dr. Beal began to criticize Dr. Logarbo for missing the luncheons and on multiple occasions told Dr. Logarbo to leave the bedside of patients (who were in critical care) so that he could participate in the luncheons.  The last time that Dr. Logarbo raised his concerns (due to the needs of his patients), Dr. Beal screamed at him over the phone and accused Dr. Logarbo of "not having his priorities in order."

11.

In a similar vein, LSUHSC-S also had monthly "social hours" (otherwise known as the "**Process Group**") by which individuals would share personal stories, talk about their traveling plans, and discuss things such as sports and entertainment. Generally, a counselor was present and facilitated the discussions. On one occasion, Dr. Logarbo was unable to attend due to the needs of his patient(s). As with the luncheons discussed above, Dr. Beal scolded Dr. Logarbo for putting the needs of his patients over the Process Group.

12.

Despite his differing opinions regarding patient prioritization with Dr. Beal, Dr. Logarbo never personally received any negative feedback from his colleagues in the residency program at LSUHSC-S ("**Program**").   To the contrary, at the Program's Christmas party, Dr. Logarbo's

- 5 -

colleagues made glowing remarks about Dr. Logarbo, copies of which are attached hereto as Exhibit A.

13.

As part of his patient-first mentality, Dr. Logarbo was also very timely.  During his time at LSUHSC-S, Dr. Logarbo was typically the first person to arrive from his team and generally made it to his assigned area well prior to his scheduled arrival time even though several other colleagues were late.  In fact, Dr. Logarbo was only late to work on one occasion (due to a mistake with his alarm clock).

14.

Dr. Logarbo also displayed a passion for medical research.  While not required pursuant to the Agreement, Dr. Logarbo made significant efforts to publish a medical research paper and eventually succeeded in doing so.  Dr. Logarbo asked Dr. Beal on at least two occasions for her department's support of research, but she flatly refused each time.  Nevertheless, Dr. Logarbo on his own successfully published research which brought positive notoriety to LSUHSC-S.

15.

Dr. Beal further insisted on communicating with Dr. Logarbo and others in the Program using "What's App."  This "app" was ill-suited to a timely and constructive exchange of information.  Because the messages were overrun with personal stories and irrelevant comments of the participants (rather than medical/academic/scientific matters), Dr. Logarbo volunteered to create a newsletter which would contain the relevant announcements for this week. However, Dr.

Logarbo's request to assist the communication methods of the program was once again rebuffed by Dr. Beal.

16.

Despite his scholarship efforts and his patient-first mentality, on February 17, 2021, Dr. Beal called Dr. Logarbo to an off-site, unscheduled meeting in south Caddo Parish whereby she handed him a termination letter, which stated that he was being dismissed from the Program ("**Termination Letter**"). A copy of the Termination Letter is attached hereto as Exhibit B.

17.

The Termination Letter was a complete shock to Dr. Logarbo who believed that his patient-first mentality and scholarships efforts were a vital part of LSUHSC-S.

18.

The Termination Letter, which had an Effective Date of February 23, 2021, was filled with inconsistencies and/or inaccurate statements. For instance, the Termination Letter erred in the following manners:

　　a) Falsely claiming that Dr. Logarbo cursed at a patient;

　　b) Falsely claiming that Dr. Logarbo failed to create a PEAC account or perform any PEAC or GCEP modules;

　　c) Falsely claiming that Dr. Logarbo was repeatedly late at work;

　　d) Falsely claiming that received negative feedback from his peers; and

　　e) Mischaracterizing Dr. Logarbo's absence from the weekly luncheons and the Process Group.

19.

The Termination Letter was arbitrary, capricious, without probable cause, and without due process.

20.

For reasons later described herein, the Termination Letter was also defective as it failed to provide Dr. Logarbo with "any written documentation leading to dismissal" and instead, merely made reference to certain accusations such as general and vague complaints allegedly made against Dr. Logarbo, without providing any documentary evidence whatsoever of said accusations.

21.

On or about March 1, 2021, Dr. Logarbo timely submitted a request for reconsideration to the Chairman of the Department of Medicine, Steven Bailey, MD ("**Dr. Bailey**"). A copy of this request is attached hereto as Exhibit C.

22.

On or about March 8, 2021, Dr. Bailey upheld the termination without any details or reasonable explanation. A copy of Dr. Bailey's decision is attached hereto as Exhibit D.

23.

Upon information and belief, this "rubber stamp" of Dr Beal's decision was based on the numerous factual errors and false allegations of the Termination Letter and was again arbitrary, capricious, and without probable cause.  Dr. Logarbo was provided a deadline of March 15, 2021, to appeal this decision to the Appeal Review Committee ("**Appeal**").

24.

On the night of March 14, 2021, Dr. Logarbo received the tragic news that his father unexpectedly passed away.  This had a devasting impact on Dr. Logarbo.

25.

Due to the horrific news, Dr. Logarbo spoke with John Vanchiere, MD ("**Dr. Vanchiere**") of LSUHSC-S regarding his father's passing and an extension of time to file the Appeal. This conversation took place in Dr. Logarbo's apartment a few hours after Dr. Logarbo learned of his father' passing. Dr. Vanchiere informed Dr. Logarbo, on behalf of LSUHSC-S, that an extension of time was granted to Dr. Logarbo to file the Appeal. Dr. Vanchiere made it clear that Dr. Logarbo could file the Appeal at a later date due to the need to regroup from his father's passing. Again, the extension of time granted to Dr. Logarbo through Dr. Vanchiere, on behalf of LSUHSC-S, was not limited to a specific date. Dr. Vanchiere's granting of the extension of the Appeal on behalf of LSUHSC-S was supported by Dr. Bailey who assured Dr. Vanchiere that the extension "would not be a problem."  Dr. Vanchiere indisputably carried the requisite authority to bind LSUHSC-S to the proposed extension of time. Dr. Logarbo accepted the indefinite extension of time granted and/or offered by LSUHSC-S and ultimately relied upon the agreement for the indefinite extension of time, as he, rather than filing his Appeal on March 15, 2021, took time to regroup from his father's tragic passing.

26.

After grieving the death of his father for several weeks (and with the understanding that he was provided an indefinite extension of time to file the Appeal), on April 9, 2021, Dr. Logarbo submitted the Appeal, a copy of which is attached hereto as Exhibit E.

27.

However, on April 19, 2021, LSUHSC-S arbitrarily and capriciously rejected the Appeal on the basis that it was untimely ("**Rejection Letter**"). A copy of the Rejection Letter is attached hereto as Exhibit F.

28.

As seen in the Rejection Letter, the decision to ignore the Appeal was based largely upon the mistaken belief that the original extension provided by Dr. Vanchiere was for only two weeks. To correct this mistake, Dr. Logarbo provided Defendant with an affidavit by Dr. Vanchiere ("**Affidavit**").  According to the Affidavit, the extension to file the Appeal was not limited to a specific time frame. A copy of the Affidavit is attached hereto as Exhibit G.

29.

Despite receiving Dr. Vanchiere's Affidavit and an additional request for reconsideration by Dr. Logarbo, LSUHSC-S once again arbitrarily and capriciously refused to consider the Appeal.

## DEFENDANT'S DUE PROCESS POLICIES AND PROVISIONS

30.

As part of its residency program, LSUHSC-S established a GMEC MANUAL Policies and Procedures 2019 – 2020 ("**Residency Manual**").  An excerpted copy of the Residency Manual is attached hereto as Exhibit H.

31.

The Residency Manual provides employees (sometimes referred to as "**House Staff**" or "**House Officers**") with due process protections ("**Due Process Protections**"). The Due Procession Protections provide in pertinent part:

> **[LSUHSC-S] is committed to the principal of due process. Due process is defined as allowing an individual notice of the proposed action and with the allegations and evidence against him/her, to present his/her side of the story to the decision-maker, and unless the offense is egregious, be given the opportunity for improvement.** The DECISION-MAKER for the House Staff is the House Staff's Department Chair.
>
> The regular periodic evaluations (supplemented by any additional evaluations, counseling, and interactions with faculty) should alert the House Staff to his/her status/performance. Since House Staff are professionals, they have the responsibility to be aware of their status, and to inquire of the faculty concerning their progress in the residency program. Upon receiving ANY negative evaluation, the House Staff should contact his/her program director immediately for advice and counsel.
>
> *                                    *                                    *
>
> If at any time the Program Director determines dismissal is warranted, **the program director shall notify the House Officer, the DIO and the Graduate Medical Education office in writing. The Program Director shall also provide any written documentation leading to dismissal.** Once the GME office receives notification, the GME office will notify the Human Resources department of the termination and the effective dates.

- 11 -

(emphasis added).

32.

In conjunction with the Due Process Protections, the Residency Manual also provides

appeals process ("**Appeals Process**") which affords in pertinent part:

> House Staff training is a serious responsibility both on the part of the House Staff and the faculty responsible for imparting such training. As medicine has progressed, and specialization has become more complex, the departments providing such training are best equipped to judge the clinical capabilities of the House Staff in their departments. It is expected that the faculty within the department/section sponsoring a residency/fellowship program will be involved in evaluating House Staff within their respective programs.
>
> **The role of the appeals process is to ensure that the House Staff has been fairly evaluated according to departmental standards, has been made aware of his/her deficiencies, and unless the offense(s) are egregious, be given the opportunity to correct them**. The appeals process is an administrative one, and therefore the strict rules of evidence do not apply.
>
> The appeals process following the decision of the Departmental Chair is as follows:
>
> Step 1. Appeal to the Department Chairman
> Step 2. Appeal to an Appeal Review Committee

(emphasis added).

33.

If an appeal is taken to the Appeal Review Committee, the applicant is permitted to use

witness testimony, evidence, presentation(s), and is even able to select one of the panelists.

34.

Success before the Appeal Review Committee allows the applicant to recover "all back pay and allowances from the date of the disciplinary/adverse action" and to reinstate employment (among other things).

## CLAIM #1: DECLARATORY RELIEF FOR BREACH OF CONTRACT BY LSU HEALTH

35.

Dr. Logarbo re-alleges and incorporates by reference, paragraphs 1 to 34 of the Second Amended, Restated, and Supplemental Petition as if fully set forth herein.

36.

It is well settled that an obligee enjoys the right to demand, to the extent practicable, specific performance of an obligation. *See* LSA-C.C. art. 1986. *See also Lombardo v. Deshotel*, 94 1172 (La. 11/30/94), 647 So. 2d 1086, 1090.

37.

In this case, Dr. Logarbo had a contractual relationship with LSUHSC-S by virtue of the Residency Agreement, Residency Manual, and/or other related documents.

38.

This contractual relationship afforded Dr. Logarbo certain rights, such as the ability to participate in the Appeals Process, the ability to be given the opportunity for improvement, the ability to "receive all written documentation leading to dismissal", as well other the protections set forth in the Due Process Provisions.

39.

By wrongfully terminating Dr. Logarbo without sufficient information and/or evidence, by failing to provide Dr. Logarbo with "any written documentation leading to dismissal", by improperly denying Dr. Logarbo of his opportunity to proceed with the Appeals Process despite the indefinite extension of time provided by LSUHSC-S, as well as the other actions identified herein, LSUHSC-S breached its contractual obligations toward Dr. Logarbo.

40.

In light of these contractual breaches, this Honorable Court should order that LSUHSC-S, pursuant to its contractual obligations, rescind its termination of Dr. Logarbo and reinstate Dr. Logarbo's employment, along with any and all related benefits, as well as compensation owed to him.

41.

In the alternative and at the very least, this Honorable Court should order that LSUHSC-S, pursuant to its contractual obligations, reinstate Dr. Logarbo and allow him to proceed with the Appeal.

## CLAIM #2: DAMAGES FOR BREACH OF CONTRACT BY LSU HEALTH

42.

Dr. Logarbo re-alleges and incorporates by reference, paragraphs 1 to 34 of the Second Amended, Restated, and Supplemental Petition as if fully set forth herein.

43.

In the event that this Honorable Court determines specific performance is not practicable (i.e., the reinstatement of Dr. Logarbo along with past due benefits and/or compensation), then Dr. Logarbo shows he is entitled to damages complained of herein against LSUHSC-S for LSUHSC-S' breach of the Residency Agreement, Residency Manual, and/or other related documents by virtue of LSHSC-S' wrongful termination of Dr. Logarbo without sufficient information and/or evidence, its improper denial of Dr. Logarbo's attempt to proceed with the Appeals Process despite the indefinite extension of time provided by LSUHSC-S, its failure to provide Dr. Logarbo with "any written documentation leading to dismissal", as well as all other actions identified herein. *See* LSA-C.C. art. 1986.

## CLAIM #3: DECLARATORY RELIEF FOR VIOLATION OF LOUISIANA CONSTITUTIONAL RIGHTS

44.

Dr. Logarbo re-alleges and incorporates by reference, paragraphs 1 to 34 of the Second Amended, Restated, and Supplemental Petition as if fully set forth herein.

45.

There can be no doubt that Dr. Logarbo had a property and/or liberty interest in his position at LSUHSC-S and suffered the forfeiture of a right or property when he was terminated from LSUHSC-S and deprived of his opportunity to appeal despite the agreed-upon indefinite extension of time with LSUHSC-S. *See Driscoll v. Stucker,* 2004-0589 (La. 1/19/05), 893 So. 2d 32. This

resulted in both a violation of Dr. Logarbo's rights to procedural due process and substantive due process.

46.

The Louisiana Constitution Ann. Art. 1. Section 2 provides "[n]o personal shall be deprived of life, liberty, or property, except by due process of law."   LSUHSC-S'   treatment   of   Dr. Logarbo identified herein deprived Dr. Logarbo's protected interest at LSUHSC-S in a manner so arbitrary that it "shocks the consciousness". Likewise, LSUHSC-S' decision to terminate Dr. Logarbo presented "such a substantial departure from accepted academic [and/or disciplinary] norms as to demonstrate that LSUHSC-S did not actually exercise professional judgment." *Regents of Univ. of Mich. V. Ewing*, 474 U.S. 214, 225 (1985).

47.

Due to LSUHSC-S' violation of Dr. Logarbo's constitutional rights pursuant to the Louisiana Constitution, this Honorable Court should provide Dr. Logarbo with declaratory relief and declare LSUHSC-S' termination of Dr. Logarbo as null and void, as well as require that LSUHSC-S return to Dr. Logarbo all past due benefits and/or compensation owed to him, or in the alternative and the very least, require that LSUHSC-S reinstate Dr. Logarbo and permit Dr. Logarbo to proceed with the Appeals Process.

- 16 -

## CLAIM #4: DECLARATORY RELIEF FOR VIOLATION
## OF U.S. CONSTITUTIONAL RIGHTS

48.

Dr. Logarbo re-alleges and incorporates by reference, paragraphs 1 to 34 of the Second Amended, Restated, and Supplemental Petition as if fully set forth herein.

49.

As identified above, there can be no doubt that Dr. Logarbo had a property and/or liberty interest in his position at LSUHSC-S and suffered the forfeiture of a right or property when he was terminated from LSUHSC-S, as well deprived of his opportunity to appeal despite the agreed-upon indefinite extension of time with LSUHSC-S. *See Driscoll v. Stucker,* 2004-0589 (La. 1/19/05), 893 So. 2d 32. This resulted in both a violation of Dr. Logarbo's rights to procedural due process and substantive due process.

50.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any state deprive any person of life, liberty, or property, without due process of law". LSUHSC-S' treatment of Dr. Logarbo identified herein deprived Dr. Logarbo's protected interest at LSUHSC-S in a manner so arbitrary that it "shocks the consciousness". Likewise, LSUHSC-S' decision to terminate Dr. Logarbo presented "such a substantial departure from accepted academic [and/or disciplinary] norms as to demonstrate that LSUHSC-S did not actually exercise professional judgment." *Regents of Univ. of Mich. V. Ewing*, 474 U.S. 214, 225 (1985).

- 17 -

51.

Due to LSUHSC-S' violation of Dr. Logarbo's constitutional rights pursuant to the United States Constitution, this Honorable Court should provide Dr. Logarbo with declaratory relief and declare LSUHSC-S' termination of Dr. Logarbo as null and void, as well as require that LSUHSC-S return to Dr. Logarbo all past due benefits and/or compensation owed to him, or in the alternative and the very least, require that LSUHSC-S reinstate Dr. Logarbo and permit Dr. Logarbo to proceed with the Appeals Process.

## CLAIM #5: DAMAGES FOR 1983 ACTION

52.

Dr. Logarbo re-alleges and incorporates by reference, paragraphs 1 to 34 of the Second Amended, Restated, and Supplemental Petition as if fully set forth herein.

53.

Upon information and belief, Dr. Logarbo shows that the following individuals, on behalf of LSUHSC-S and acting under the color of state law, unlawfully and improperly, unanimously voted to dismiss Dr. Logarbo from LSUHSC-S and/or to prohibit Dr. Logarbo from proceeding with the Appeals Process on the basis of untimeliness: (1) Dr. Beal, (2) Dr. Jones, (3) Dr. Adams, (4) Dr.  Adesida, (5) Dr. Nguyen, (6) Dr. Thomas, and (7) Ms. Sella. Furthermore, it is believed and asserted that Dr. Beal's decision herein was driven by her attempt to "target" Dr. Logarbo which is evidenced by her blatant and unbecoming criticisms of Dr. Logarbo's attempts to care for patients, her refusal to assist Dr. Logarbo with his attempts to publish medical research, and her

unwillingness to cooperate with Dr. Logarbo in his efforts to streamline LSUHSC-S'

communications through the creation of a newsletter.

54.

Upon information and belief, Dr. Logarbo shows that the following individuals, on behalf

of LSUHSC-S and as participants of the Medicine-Pediatrics Clinical Competence Committee

("Clinical Competence Committee"), acting under the color of state law, unlawfully and

improperly affirmed the decision to terminate Dr. Logarbo and/or the decision to prohibit Dr.

Logarbo from proceeding with the Appeals Process on the basis of untimeliness: (1) Ms. Oglesby

and (2) Ms. Cheney.

55.

Similarly, upon information and belief, Dr. Logarbo shows that the following individual,

on behalf of LSUHSC-S and as the Chair of the Clinical Committee, acting under the color of state

law, unlawfully and improperly affirmed the decision to terminate Dr. Logarbo and/or the decision

to prohibit Dr. Logarbo from proceeding with the Appeals Process on the basis of untimeliness:

Dr. Poche.

56.

Upon information and belief, Dr. Logarbo shows that the following individual, on behalf

of LSUHSC-S and acting under the color of state law, unlawfully and improperly denied Dr.

Logarbo's request for reconsideration of his termination and subsequently participated in the

unlawful and improper decision to not allow Dr. Logarbo to proceed with the appeal on the basis

of untimeliness, despite his assurance to Dr. Vanchiere that the extension "would not be a problem"

and personal knowledge that Dr. Logarbo received an indefinite extension of time to file the Appeal: Dr. Bailey.

57.

For the reasons identified herein, the actions of (1) Dr. Beal; (2) Dr. Jones; (3) Dr. Adams; (4) Dr. Adesida; (5) Dr. Nguyen; (6) Dr. Thomas; (7) Ms. Sella; (8) Ms. Oglesby; (9) Ms. Cheney; (10) Dr. Poche; and (11) Dr. Bailey; all of which were taken under the color of state law, were arbitrary, capricious, without probable cause, objectively unreasonable, and/or subjectively unreasonable, in light of the circumstances. Furthermore, their acts "violated clearly established statutory or constitutional rights of which a reasonable person would have known." This is especially true as their decision to deny Dr. Logarbo with the opportunity to proceed with the Appeal on the basis of untimeliness was made with the knowledge that LSUHSC-S previously granted Dr. Logarbo the indefinite extension of time to file the Appeal.

58.

Taken together, these actions violate Dr. Logarbo's protections under Fourteenth Amendment to the United States Constitution and the Louisiana Constitution which is further secured by the 42 U.S.C. § 1983.

**DAMAGES AND OTHER RELIEF**

59.

Dr. Logarbo re-alleges and incorporates by reference, paragraphs 1 to 58 of the Second Amended, Restated, and Supplemental Petition as if fully set forth herein.

60.

As a result of the actions complained of herein, Dr. Logarbo shows he is entitled to the

following damages from the Defendants:

    a)  Lost wages and benefits;

    b)  Lost educational expenses;

    c)  Loss of future employment opportunities;

    d)  Emotional distress; and

    e)  All compensatory and punitive damages.

61.

These damages were directly and proximately caused by the following acts of the

Defendants:

    a)    The arbitrary and capricious decision to deny Dr. Logarbo's Appeal on the basis that it was untimely, despite previously providing an indefinite extension for the filing of the Appeal;

    b)    The arbitrary and capricious decision to penalize Dr. Logarbo for continuing to work with critically ill patients instead of attending Monday luncheons whereby non time-sensitive educational videos were watched;

    c)    The arbitrary and capricious decision to penalize Dr. Logarbo for continuing to work with critically ill patients instead of attending the Process Group whereby sports, travel plans, and other personal matters were often discussed;

    d)    The arbitrary and capricious reliance on blatantly false and/or fabricated material to terminate Dr. Logarbo;

    e)    The arbitrary and capricious decision to withhold purportedly incriminating information from Dr. Logarbo and to use this information as grounds for termination;

f)      The arbitrary and capricious decision to prohibit Dr. Logarbo from using witnesses, evidence, and presentation(s) to rebut his wrongful termination; and

g)      Other acts identified in this First Amended, Supplemental, and Restated Petition.

62.

As a result of the Defendants' actions, Dr. Logarbo is entitled to all damages, attorney's fees, legal fees, expert witness fees, court costs, and judicial interest from the date of judicial demand.

63.

Dr. Logarbo requests trial by jury on all issues.

WHEREFORE, Plaintiff, Dr. Brian P. Logarbo respectful prays:

a)      For judgment in his favor declaring that LOUISANA STATE UNIVERSITY HEALTH SCIENCES CENTER SHREVEPORT is required to overturn its decision to terminate him;

b)      In the alternative, for judgment in his favor declaring that LOUISANA STATE UNIVERSITY HEALTH SCIENCES CENTER SHREVEPORT is required to reinstate his employment and allow him to proceed with his Appeal;

c)      A finding that the Defendants violated his rights pursuant to the Louisiana Constitution;

d)      A finding that the Defendants violated his rights pursuant to the United States Constitution;

e)      For all damages as reasonable under the premises; together with legal interest thereon from the date of judicial demand until paid in full, as well as all attorney's fees, court costs, and related expenses;

f)      For trial by jury on all issues; and

g)      For any and all other relief to which he is entitled.

Respectfully submitted,

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

By:_____/s/ R. Chaz Coleman_____
        Lee H. Ayres, #18770
        Todd Benson, #23648
        R. Chaz Coleman, #38165
333 Texas Street, Suite 1400
P.O. Box 1764 (71166-1764)
Shreveport, Louisiana 71101
Telephone: (318) 227-3500
Facsimile:  (318) 673-8462
Email: toddbenson@arklatexlaw.com
        leeayres@arklatexlaw.com
        chazcoleman@arklatexlaw.com

ATTORNEYS FOR PLAINTIFF, DR. BRIAN P. LOGARBO

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing will be served by electronic notice via the PACER/ECF/CMS system and by email.

Shreveport, Louisiana, this 27th day of June, 2022.

/s/    *R. Chaz Coleman*
OF COUNSEL