

**LSU Health**
**SHREVEPORT**

Health Sciences Center

Department of Medicine /
Internal Medicine
Residency Program

1501 Kings Highway
P.O. Box 33932
Shreveport, LA 71130-3932

O 318-675-4147
F 318-675-5859
www.lsuhscshreveport.edu/
departments/clinicaldepart-
ments/internalmedicine/index

February 17, 2021

Dr. Logarbo,

The Medicine-Pediatrics Clinical Competence Committee met on February 17, 2021 to discuss the terms of your probation, whether you have met the goals established in the remediation plan dated December 15, and a plan going forward. The following competencies have been deemed to be remedial:
1) Interpersonal and communication skills – based on peer evaluations and feedback, patient complaints, and attending feedback
2) Practice based learning – does not accept feedback at times. failure to respond and improve based on feedback provided verbally and in writing
3) Professionalism – tardiness, poor conference attendance, showing respect for peers and attendings, failure to accept responsibility, has little insight into behavior
4) Patient care – based on patient complaints, poor time management in clinic, inappropriate prescription for a geriatric patient, lack of empathy
5) Systems based practice – poor skills working with a team, utilizes communication strategies that hamper collaboration and teamwork; verbal and/or nonverbal behaviors that disrupt effective collaboration with team members

The committee voted for immediate dismissal with no credit to be given for this year due to deficiencies in professionalism, which even without the other competencies qualifying as remedial, can result in grounds for dismissal. The dismissal is effective February 23, 2021. You have the right to appeal this decision, and the process for that is detailed in your GME manual, a copy of which is being provided to you again today.

The decision and the documentation supporting it have been reviewed by the Clinical Competence Committee and the Office of Graduate Medical Education to ensure compliance with all institutional policies.



EXHIBIT B

Brian Logarbo – timeline

July 13 – missed employee health appointment and did not reschedule. Rescheduled by M'Liss August 13.

July 20 – SOS filed by nursing staff on ward rotation for cursing at a nurse (at the patient's bedside) while she attempted to explain why an NG tube had not been placed as ordered.

August 26 – SOS written by nursing staff for unprofessional behavior when contacted by nursing staff for IV access needed on a patient before they could go to the OR. He was quoted as saying "We're going to do your job because you can't" and then hung up on the nurse. His upper level Dr. Derek Rainwater apologized for him.

August 31 – first email reminder to create PEAC module account and advised to complete the two modules that were due by then

September 16 – second email reminder for PEAC module account

September 22 – met with Dr. Beal to discuss SOS from the MICU in which Dr. Logarbo reportedly yelled at a patient saying "Sit your ass down" and was unprofessional to the patient and the nurse who asked him not to enter the room as the patient was already agitated.

September 24 – met with Dr. Beal and chief resident to discuss SOS from the ward and MICU as above and formulated remediation plan to start meeting with Dr. Cogburn to work on communication issues and ability to deal with anger and frustration. He saw Dr. Cogburn on 11/12 and 1/14. Other meetings have not been verified yet.

September 28 – letter of concern detailing above issues provided to and signed by Dr. Logarbo with (see attached)

October 5 – third email reminder to create a PEAC account and that 3 modules were overdue

October 27 – emailed regarding delinquent medical records from 7/30-10/2

November – parent of pediatric patient complained to Dr. Mhanna about Dr. Logarbo saying that "she was not workable".

November 16 – first email request to schedule USMLE Step 3

November 17 – first email request to complete compliance training by 11/23
November 19 – second request
November 30 – third request (after due date)

November 30 – peer complaint about unprofessional behavior in pediatric clinic and not being a team player

December 1 – meeting with Drs. Beal and Callegan-Poche and all Medpeds interns. After the initial part of the meeting, Drs. Beal and Callegan-Poche addressed concerns that Dr. Logarbo had changed a morning report topic without notifying his co-intern who was also preparing to present with him that day. His response was essentially that she is not "on his level" and that he would not change how he handled the situation in the future. He also stated that he was "over it" and did not want to deal with her or work with her in the future. He stated that he was not interested in changing himself and that he prefers to work on his own. His priority was to publish five case reports. When told that he could not work in a team setting alone, he stated "you haven't met me; yes, I can".

December 2, 4, 7 – multiple email requests for badge number in order to have a call room key ordered

December 15 – after the Clinical Competence Committee met and reviewed his evaluations and performance, Dr. Logarbo was placed on probation based on poor interpersonal and communication skills. Since September request to meet with Dr. Cogburn, he had done that once. See remediation letter dated December 15 and signed by Dr. Logarbo.

December 31 – still had not created a PEAC account or done any PEAC or GCEP modules.

January 10 – was 40 minutes late to internal medicine rounds and was falling asleep on rounds. Dr. Beal discussed this with him along with reports that he was late for check out. He stated that he was arriving at 6:50 every morning and that the night team was just checking out early. 6:50 is already later than the expectations outlined on Internal Medicine from the chief's email with 6:30 or earlier as the minimum arrival time.

January 13 – Brian saw 3 patients in MedPeds continuity clinic, finishing at 6:30 and missing his team's call night on Internal Medicine. When Dr. Beal spoke with him about time management and that this would not work especially as he moves into the role of the upper level, he stated "with all due respect, Dr. Beal, my patients appreciated how long I spent with them and I would not change how I do things in the future".

Peer evaluations – "rude", "unprofessional", "very difficult to work with", scores of 2 out of 9 for effective communication and accepting responsibility

For the week of February 1, he did not show up and took that week as vacation instead of the week of February 8. He did have a valid point that his name was not on the schedule for that week on Lightning Bolt, but it was not for the next week either. However, he did not apologize for the mistake and just repeated that it was not his fault. He stated he would work on his communication skills in the future.

For the week of February 8, he did not attend morning report once. He was late for clinic on Wednesday February 10 as he stated that he did not know to go there instead of to his elective. This was at 8:20; morning report starts at 8:00.

February 11 – prescribed ambien to an 80-year-old patient (contraindicated based on Beers critieria and easily searched on UpToDate) without discussing with an attending. Also told this patient who lives far away that the prescription would be waiting at the front desk and just never put it there. She made several trips to the clinic to try and pick it up. An attending finally was approached to remedy the situation, and the issue was addressed. When confronted with the situation, he stated that he told the patient he would NOT prescribe her this medication when the only note he placed in the chart was the one stating that he would. When confronted, he told Dr. Bass that he had spoken with the patient multiple times.

February 17 – PEAC report reviewed. Dr. Logarbo has not done the module required for January.

Dr Logarbo has failed to meet the 70% conference attendance requirement, actually falling short significantly at 30%. At noon conference February 8, he signed in during the last 10 minutes of conference. Dr. Beal texted to inquire about his tardiness, and he responded that he had to round on his pulmonary elective with the "chair of pulmonary critical care who is very busy" and that Dr. Beal should consider changing the time of conference. When Dr. Beal called to discuss this text and to discuss that conference attendance was part of the terms of his probation, he continued to argue.

Dr. Logarbo does not participate in program activities and communications. He does not respond promptly to emails. In spite of specifically being told to regularly check our Whatsapp for updates and important communications, he has consistently neglected this, missing announcements such as clinic closures and plans for inclement weather. As of February 17, he has not checked the Whatapp group since January. He has attended one of our medpeds journal clubs out of the monthly sessions we have had since July.

This behavior has continued even on probation when this should be the time he puts his best foot forward.

The following categories are remedial:
1) Interpersonal and communication skills
2) Practice based learning
3) Professionalism
4) Patient care
5) Systems based Practice


February 17, 2021 – The Medicine-Pediatrics CCC met to discuss Dr. Logarbo's performance and unanimously voted for immediate dismissal. The decision was based primarily on prior deficiencies in addition to concern for him adversely affecting the morale of the other residents in our program and continued or worsening performance if he were to finish the year. In

addition, he would likely not merit credit for this intern year as he at the very least fails for professionalism.

**Resident/Fellow Receives Disciplinary Action**

Resident/Fellow Contests Action (within 5 working days)



**Departmental Chair renders opinion of Resident/Fellow's appeal**

Suspension of < 30 days: Departmental Chair is final appeal (within 5 working days)

Suspension of ≥ 30 days or non-renewal of contract, termination: Appeals process may be requested



**Suspension of ≥ 30 days or non-renewal of contract**

Written request for review made to Departmental Chair (within 5 working days)



**Decision is Rendered**

Departmental Chair renders a written decision (within 5 working days)

If the Department Chair and the Program Director are the same person, the Designated Institutional Offical will render a written decision (within 5 working days)



**Resident/Fellow Disagrees with the decision of the Departmental Decision**

Resident/Fellow requests hearing of the Appeals Review Panel (within 5 working days) which includes the name of their appeals panel selection



**Appeals Review Panel**

Resident/Fellow selected member; Departmental Chair selected member; Legal Afairs Attorney (non voting/deliberating member)

Departmental Chair shall submit names (within 5 working days)



**Submission of Documents to be considered by Appeals Review Panel**

No later than 5 working days prior to hearing and include 5 copies of documents to be considered by the appeals panel

Reviewed by GMEC 6/2019



- Appeals Hearing is opened
- a. Department Chair or Program Chairman makes a presentation
- b. Resident/Fellow makes a presentation
- c. Each side may have between 1 and 3 witnesses who are only permitted in the room for the 5 minutes they testify
- d. Appeals Review Panel may ask questions at any time
- Appeal Hearing is closed
- Appeals Review Panel notifies Resident/Fellow in writing of the decision (within 10 working days)

Reviewed by GMEC 6/2019

Sincerely,

*[signature]*

Lauren Beal, MD

By signing this letter, I acknowledge its contents and my understanding of them. I have been made aware of the appeals process and have been provided a copy.

_____

Brian Logarbo, MD

## House Officer Dismissal/Non-Renewal of Contract (GME 2.1.a)

<u>Policy</u>
In all cases in which revocation of a House Officer's appointment has been recommended by the program director of a clinical department, the House Officer and the Designated Institutional Official (DIO) shall be notified in writing by the program director. Any House Officer who is not to be reappointed at the end of the contract year should be so notified in writing by the program director at least four months in advance. However, if the primary reason for the non-renewal occurs within the four months prior to the end of the agreement, the notice of non-renewal may be sent less than four months in advance of the non-renewal.

If the House Officer wishes a hearing, he/she must submit a written request to their specific Department Chairman within ten (10) days after receipt of the notification letter. Otherwise, the Designated Institutional Official will act upon the program director's recommendation and coordinate the Resident's dismissal.

<u>Procedure</u>
If at any time the Program Director determines dismissal is warranted, the program director shall notify the House Officer, the DIO and the Graduate Medical Education office in writing. The Program Director shall also provide any written documentation leading to dismissal. Once the GME office receives notification, the GME office will notify the Human Resources department of the termination and the effective date.

Immediate dismissal may occur at any time without prior notification in instances of gross misconduct or illegal conduct.

Dismissal of a House Officer may occur for but are not limited to any of the following:

- Failure to meet the performance standards of the training program
- Failure to comply with the policies and procedures of the training program, GMEC, University Health, or other participating sites
- Failure to comply with regulations of the Louisiana State Board of Medical Examiners
- Failure to obtain appropriate visa or other appropriate work authorization documents
- Inability to pass the requisite examinations for license to practice medicine in the United States
- Illegal, unethical, or unprofessional conduct
- Conduct that is detrimental to patients, self, or others

In addition to notifying the house officer, DIO and GME office, programs will also be required to report to the Louisiana State Board of Medical Examiners in writing when a physician's training has been terminated.

House Officers must complete the House Officer Clearance Form provided by the GME Office upon dismissal/termination from program. This includes returning all ID Badges, keys, and other equipment issued while in training to appropriate departments on campus and any participating sites.

Any House Officer receiving notice of dismissal or intent to not renew his/her contract may request a hearing as outlined in the Due Process and Appeals Policies located in the House Officer Manual.

Reviewed by GMEC 1/2021

of the committee will be appointed/selected by the Senior In-House Counsel for the Medical School, and will vote only in the event of a tied vote between the other two panel members. An attorney from the office of Legal Affairs or a suitable designee shall serve as the legal adviser to the committee. The attorney shall not vote in the Committee's voting, but shall be responsible for coordinating the meeting and drafting the report of the Committee for the review and signature of the Committee members (within 5 working days).

7. Each party is responsible for securing the attendance of their respective witness(es). If a witness is not available when called during the hearing their participation will be disallowed.

8. Not later than **five (5) working days** prior to the hearing, both sides (House Staff and department) shall submit to the office of Legal Affairs 5 copies of any and all documents to be considered by the appeals committee and their list of no more than 3 witnesses. Failure of either party to timely submit documents may preclude consideration of those materials by the panel.

9. The hearing shall be conducted as follows:
    First, the Department Chairman or Program Director may make a 30 minute presentation to the committee, which shall describe the action taken and the reasons for the action(s) taken. Following the presentation by the Department, the House Staff may make a 30 minute presentation to the committee that include his/her version of the events that resulted in the action by the Department, as well as any other relevant information that he/she wishes for the committee to consider. Each side may have up to three witnesses who each may make a presentation up to fifteen (15) minutes in length. At any time during the proceedings, the members of the appeals committee may ask questions of the House Staff or Department Chairman or Program Director or any witness who participates in the hearing.

10. The appeal hearing shall be closed. Witnesses to participate in the proceeding shall be excluded from the hearing and admonished not to discuss the case with anyone until after the hearing has concluded.

11. Both parties may present a brief (less than 10 minutes) closing written summary at the end of the hearing.

12. The Appeals Committee makes a decision whether or not to uphold the action of the Department Chairman. The House Staff will be notified, in writing within 10 working days of the hearing conclusion, of the decision of the Committee whether or not to uphold the action of the Department Chairman. The written decision concludes the administrative appeal process. The written decision shall be hand delivered or sent by certified mail with signature of receipt.

The disciplinary/adverse action shall be carried out after the decision of the Department Chair (who is the decision-maker). Should the House Staff prevail on the appeal to Senior University Official's, the House Staff will be entitled to all back pay and allowances from the date of the disciplinary/adverse action. Although the disciplinary/adverse action shall be carried out after the decision of the Department Chair, no notification of the appropriate boards and agencies will occur until the final step in the appeal. An exception to this notification may be made when required by law, rule, regulation, or contract.

Reviewed by GMEC 6/2019