# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **BRIAN LOGARBO** | § | **CIVIL ACTION** |
| **VERSUS** | § | **CASE NO. 5:22-cv-00831** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER** | § | **JUDGE TERRY A. DOUGHTY** |
| **SHREVEPORT, ET AL** | § | **MAG. JUDGE MARK L. HORNSBY** |

## MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6)

Respectfully submitted,

JEFF LANDRY
Attorney General

By: _/s/Patrick W. Woolbert__
Patrick W. Woolbert (#34998)
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
330 Marshall Street, Suite 777
Shreveport, LA  71101
Telephone: (318) 676-5706
Facsimile: (318) 676-5703

COUNSEL FOR DEFENDANTS

WIENER, WEISS & MADISON
A Professional Corporation

By: _/s/ Marjorie L. Frazier_
Marjorie L. Frazier (#32991)
Reid A. Jones (#34611)
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA  71120-1990
Telephone:  (318) 226-9100
Facsimile:  (318) 424-5128

COUNSEL FOR LSUHSC-S

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

I.      STATEMENT OF THE CASE .................................................................1

II.     LAW REGARDING MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(6) .....4

III.    DISCUSSION ...........................................................................................5

        A.  PLAINTIFF'S CLAIMS FOR VIOLATION OF DUE PROCESS RIGHTS........5

            i.   PROCEDURAL DUE PROCESS .........................................6

            ii.  SUBSTANTIVE DUE PROCESS .........................................7

        B.  PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 ...........................8

        C.  PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT ...................10

            i.   TERMINATION "WITHOUT SUFFICIENT INFORMATION AND/OR EVIDENCE" ....................................................11

            ii.  FAILURE TO PROVIDE "ANY WRITTEN DOCUMENTATION LEADING TO DISMISSAL" ...........................................16

IV.     CONCLUSION ......................................................................................17

        CERTIFICATE OF SERVICE .................................................................. 19

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Alton v. Tex. A&M Univ.*,
   168 F.3d 196 (5th Cir. 1999) ....................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)........................................4-5

*Barsoumian v. Williams*,
   29 F.Supp.3d 303 (W.D.N.Y. 2014)................................................................7

*Bd. Of Curators of Univ. of Mo. v. Horowitz*,
   435 U.S. 78 (1978) ........................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................4-5, 8

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*
   632 F.3d 148 (5th Cir. 2010) ................................................................. 4

*Davis v. Mann*,
   882 F.2d 967 (5th Cir.1989) ................................................................. 6

*Denham Homes, L.L.C. v. Teche Federal Bank*,
   2014-1576 (La.App. 1 Cir. 9/8/15), 182 So.3d 108 ......................................... 10

*Dignam v. Chumley*
   CIV-A 14-1029, 2014 WL 3542122 (W.D. La. July 17, 2014) .........................10-11

*Ekmark v. Matthews*,
   524 F. App'x 62 (5th Cir. 2013) .............................................................. 6

*Hafer v. Melo*,
   502 U.S. 21 (1991) ........................................................................... 9

*Hale v. Townley*,
   45 F.3d 914 (5th Cir. 1995) .................................................................. 9

*Hampton v. Oktibbeha Cnty. Sheriff Dep't*,
   480 F.3d 358 (5th Cir. 2007) ................................................................ 10

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ........................................................................... 9

*In re Katrina Canal Breaches Litigation*,
   495 F.3d 191 (5th Cir. 2007) ................................................................. 4

*Johnson v. Louisiana State.*,
   275 F. App'x 392 (5th Cir. 2008)............................................................. 5

*Johnson v. State, Louisiana Dept. of Educ.*,
   01-2002, 2007 WL 2398815 (E.D. La. Aug.9, 2007)......................................... 5

*Levitt v. Univ. of Tex. at El Paso*,
   759 F.2d 1224 (5th Cir. 1985) ................................................................ 6

*Malley v. Briggs*,
   475 U.S. 335 (1986) ........................................................................... 9

*Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*,
   369 F.3d 464 (5th Cir. 2004) ................................................................. 4

*Papasan v. Allain*,
   478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)....................................... 5

*Pham v. Blaylock*
  712 F.App'x 360 (5th Cir. 2017) ...................................................................... 7
*Pham v. Univ. of La. at Monroe*,
  194 F.Supp.3d 534 (W.D. La. 2016) ................................................................ 7
*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) ............................................................................ 4
*Regents of Univ. of Mich. v. Ewing*,
  474 U.S. 214 (1985) .......................................................................................... 8
*Schannette v. Doxey*,
  2:12-CV-01416, 2013 WL 4516041 (W.D. La. Aug. 22, 2013) ....................... 5
*Shaboon v. Duncan*,
  252 F.3d 722 (5th Cir.2001) ............................................................................. 6
*Shah v. Univ. of Texas Sw. Med. Sch.*,
  54 F. Supp. 3d 681 (N.D. Tex. 2014) ............................................................... 6
*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ............................................................................ 5
*Stark v. Univ. of S. Miss.*,
  8 F.Supp.3d 825 (S.D. Miss. 2014) ................................................................. 7
*Taha v. William Marsh Rice University*,
  H-11-2060, 2012 WL 1576099 (S.D. Tex. May 3, 2012) ................................ 5
*Velez v. Levy*,
  401 F.3d 75 (2d Cir. 2005) ............................................................................... 7
*Will v. Michigan Dept. of State Police*,
  491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).................................... 9

## **STATUTES**

42 U.S.C. § 1983.................................................................................. 3, 8-10, 18

Article 1, Section 2 of the Louisiana Constitution ......................................... 5

## **RULES**

Federal Rule of Civil Procedure 12(b)(6) ................................. 1, 3, 4, 11, 18

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **BRIAN LOGARBO** | § | **CIVIL ACTION** |
| **VERSUS** | § | **CASE NO. 5:22-cv-00831** |
| **LOUISIANA STATE UNIVERSITY** | § | **JUDGE TERRY A. DOUGHTY** |
| **HEALTH SCIENCES CENTER** | | |
| **SHREVEPORT, ET AL** | § | **MAG. JUDGE MARK L. HORNSBY** |

<u>**MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO
DISMISS PURSUANT TO FRCP RULE 12(b)(6)**</u>

MAY IT PLEASE THE COURT:

Defendants, the State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College ("LSUHSC-S")[1], Dr. Lauren Beal, Dr. Ryan Jones, Dr. Sara Adams, Dr. Yemisi Adesida, Dr. Vinh Nguyen, Dr. Wanda Thomas, Dr. Amanda Callegan-Poche', M'liss Sella, Leisa Ogelsby, Christine Cheney, and Dr. Stephen Bailey (LSUHSC-S and the individual defendants collectively referred to herein as the "Defendants"), offer this memorandum in support of their motion requesting that all of Plaintiff's claims, except those breach of contract claims arising out of LSUHSC-S's alleged improper denial of his opportunity to proceed with the Appeals Process, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.**   <u>**STATEMENT OF THE CASE**</u>

On or about July 1, 2020, the Plaintiff, Brian P. Logarbo ("Plaintiff"), began his first year of medical residency at the Louisiana State University Health Sciences Center in Shreveport,

---

[1] For ease of reference, because the Plaintiff attended Louisiana State University Health Sciences Center in Shreveport and because his Second Amended Complaint refers to the Defendant, the State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College, as LSUHSC-S, the Defendants will do so here as well.

Louisiana.  [Doc. 29, ¶5]. In the spring of 2020, Plaintiff entered into an "Agreement for Post Graduate Training".  [*Id.*]. As part of its residency programs, LSUHSC-S issued a GMEC Manual Policies and Procedure. [*Id.* at ¶30]. During the first few months of his residency, the Plaintiff was involved in multiple incidents of unprofessional behavior and repeatedly failed to abide by the educational requirements of his program. [*Id.* at ¶16; Doc. 29-2, p.2-3]. On September 22 and 24, 2020 the Plaintiff met with his program director, Dr. Lauren Beal ("Dr. Beal"), to discuss these incidents. [Doc. 29, ¶16; Doc. 29-2, p.2].  During the September 24th meeting, a remediation plan was developed under which the Plaintiff was required to meet with a Dr. Cogburn "to work on his communication issues and ability to deal with anger and frustration".  [*Id.*].

On December 15, 2020, the Medicine-Pediatrics Clinical Competence Committee (the "Committee") placed Plaintiff on probation and implemented a remediation plan for him to complete. [Doc. 29, ¶16; Doc. 29-2, p.3; Doc. 29-6, p.1].

On February 17, 2021, the Committee met to discuss the terms of the Plaintiff's probation, and whether he had met the expectations of his remedial plan. [Doc. 29, ¶16; Doc. 29-2, p.1]. The Committee unanimously voted for the Plaintiff's immediate dismissal, which was to be effective on February 23, 2021. [Doc. 29, ¶16, 18; Doc. 29-2, p.1, 4-5]. A letter detailing the Committee's decision and reasons therefor was provided to the Plaintiff on February 17, 2021. [Doc. 29, ¶16; Doc. 29-2]. The letter also informed the Plaintiff of his right to seek an appeal of the Committee's decision pursuant to the procedure set forth in the GMEC Manual.  [Doc. 29, ¶16; Doc. 29-2, p.1, 6-10].

On March 1, 2021, the Plaintiff submitted an appeal request to Dr. Steven Bailey, Chairman of the Department of Medicine ("Dr. Bailey"). [Doc. 29, ¶21; Doc. 29-3]. By letter dated March 8, 2021, Dr. Bailey informed the Plaintiff of his decision that the dismissal would be upheld.  [Doc.

29, ¶22; Doc. 29-4]. Thirty-one days later, on April 9, 2021, the Plaintiff submitted a request for a formal hearing before the Appeals Advisory Review Panel regarding his dismissal from the residency program. [Doc. 29, ¶26, Doc. 29-5].   By letter dated April 19, 2021, counsel for LSUHSC-S informed the Plaintiff that his request for a formal hearing was being denied due to his request being untimely.   [Doc. 29, ¶27, Doc. 29-6].

This action was commenced on June 28, 2021 by the Plaintiff's filing of an *Original Petition for Breach of Contract, Declaratory Relief and Damages* in the First Judicial District Court, Parish of Caddo, State of Louisiana. Said action was styled as *Brian P. Logarbo v. Louisiana State University Health Sciences Center – Shreveport*, bearing docket number 631,168. LSUHSC-S filed an *Exception of Vagueness and Ambiguity* on November 10, 2021, and an *Exception of No Cause of Action* on November 23, 2021.

On February 2, 2022, the Plaintiff filed a *First Amended, Supplemental, and Restated Petition for Breach of Contract, Declaratory Relief and Damages, and Jury Request*, adding Dr. Lauren Beal, Dr. Ryan Jones, Dr. Sara Adams, Dr. Yemisi Adesida, Dr. Vinh Nguyen, Dr. Wanda Thomas, Dr. Amanda Callegan-Poche', M'liss Sella, Leisa Ogelsby, Christine Cheney, and Dr. Stephen Bailey as named Defendants to the action (the "First Amended Petition"). The First Amended Petition asserted causes of action for: (1) Declaratory Relief for Breach of Contract by LSU Health; (2) Damages for Breach of Contract by LSU Health; (3) Declaratory Relief for Violation of Louisiana Constitutional Rights; (4) Declaratory Relief for Violation of U.S. Constitutional Rights; and (5) damages pursuant to 42 U.S.C. § 1983.

On April 29, 2022, Defendants filed a *Motion to Dismiss Pursuant to FRCP 12(b)(6)*. [Doc. 9]. Thereafter, the Plaintiff filed an *Opposition* and Defendants filed a *Reply* thereto. [Docs. 20 & 21]. On June 13, 2022, the Court issued a *Memorandum Order* granting the Plaintiff until June

27, 2022 to file a motion for leave to amend his complaint. [Doc. 22].  An *Order* granting the Plaintiff's motion for leave to amend was issued by the Court on July 6, 2022. [Doc. 28]. The same day, the Plaintiff filed his *Second Amended, Supplemental, and Restated Complaint for Breach of Contract, Declaratory Relief and Damages* (the "Second Amended Complaint") asserting the same causes of action but with expanded allegations. [Doc. 29].

## II.    LAW REGARDING MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(6)

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). The court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). In order to survive a Rule 12(b)(6) motion, the plaintiff's complaint must include allegations of fact sufficient to state a claim for relief that is plausible on its face. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a complaint is inadequate if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"[A] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

"Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678. "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'" *Taha v. William Marsh Rice University*, H-11-2060, 2012 WL 1576099 (S.D. Tex. May 3, 2012), quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 556, quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## III.   DISCUSSION

### A.  *Plaintiff's Claims for Violations of Due Process Rights*

In his Second Amended Complaint, the Plaintiff alleges that his dismissal from the LSUHSC-S residency program violated his due process rights granted by Article 1, Section 2 of the Louisiana Constitution, as well as the Fourteenth Amendment to the United States Constitution. [Doc. 29, ¶¶44-47]. The Due Process clause of the Louisiana Constitution does not vary semantically from, nor offers greater protection against government misconduct than the due process clause of the Fourteenth Amendment. *Schannette v. Doxey*, No. 2:12-CV-01416, 2013 WL 4516041 (W.D. La. Aug. 22, 2013); *Johnson v. State, Louisiana Dept. of Educ.*, No. 01-2002, 2007 WL 2398815 (E.D. La. Aug.9, 2007) off'd sub nom. *Johnson v. Louisiana State*, 275 F. App'x 392 (5th Cir. 2008). "Accordingly, federal jurisprudence is relevant in determining the nature and extent of La. Const. Art. I, § 2's due process protection." *Schannette*, supra.

5

### i. Procedural due process

In the due process context, medical residents are treated as students rather than employees of the hospital. *Ekmark v. Matthews*, 524 F. App'x 62, 63–64 (5th Cir. 2013). "It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program." *Id.*, citing *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir.1989). Due to the complex student-faculty relationship, students are not entitled to the same due process protections as are employees. *Ekmark*, 524 F. App'x at 63–64, citing *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir.2001).

Educational institutions "should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment." *Davis*, 882 F.2d at 974. The physicians and administrators directing medical residency programs are in the best position to determine which candidates are suited to progress through the program and have satisfactorily completed the requirements for certification. *Id.*

Adverse academic actions against medical residents require only the minimum procedure of notice and not a hearing. *Shah v. Univ. of Texas Sw. Med. Sch.*, 54 F. Supp. 3d 681, 692 (N.D. Tex. 2014); *Ekmark*, 524 F. App'x at 64, citing *Bd. Of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, (1978). Even where a program sets more stringent procedural requirements, these rules "do not establish the constitutional floor of due process." *Ekmark*, 524 F. App'x at 64, citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985). A medical resident receives all process due when they are informed of the faculty's dissatisfaction with their clinical progress and the danger that this posed to continued enrollment. *Shah*, 54 F.Supp.3d at 692, quoting *Horowitz*, 435 U.S. at 85.

The letter dated February 17, 2021 [Doc. 29-2], hereinafter referred to as the "Termination

Letter", clearly sets forth the proposed disciplinary action against the Plaintiff and describes his deficiencies in five separate competency areas (interpersonal and communication skills, practice-based learning, professionalism, patient care and systems-based practice). Each of these deficiencies is supported with specific examples. [Doc. 29-2, p. 2-5]. This action was taken after the Plaintiff was placed on academic probation.  [Doc. 29-2, p. 1, 3-4; Doc. 29-6, p. 1]. As such, the Plaintiff was well apprised of the grounds for his dismissal. Under the procedural due process standards governing academic dismissals, the Plaintiff received all the notice constitutionally required.

### ii. Substantive due process

Where a plaintiff's procedural and substantive due process claims rest on the same allegations, the substantive due process claim must either fail or be subsumed within the more particular procedural due process claim. *Barsoumian v. Williams*, 29 F.Supp.3d 303, 315–16 (W.D.N.Y. 2014), citing *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005).  Defendants submit that the allegations contained in the Plaintiff's Second Amended Complaint show that his substantive and procedural due process claims arise out of the same circumstances. As such, any substantive due process claims the Plaintiff may have should be subsumed within his procedural due process claims, which, as explained above, should be dismissed. However, out of an abundance of caution, Defendants will briefly address the Plaintiff's substantive due process claim.

A plaintiff can only succeed on a substantive due process claim if he alleges that he was deprived of a protected interest in a manner so arbitrary that it shocks the conscience. *See Pham v. Univ. of La. at Monroe*, 194 F.Supp.3d 534, 546 (W.D. La. 2016), aff'd sub nom. *Pham v. Blaylock*, 712 F. App'x 360 (5th Cir. 2017); *Stark v. Univ. of S. Miss.*, 8 F.Supp.3d 825, 841 (S.D. Miss. 2014). For academic decisions, the plaintiff must allege "such a substantial departure from

accepted academic norms as to demonstrate that [the defendants] did not actually exercise professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). This provides only a narrow avenue for judicial review. *Id.* at 227.

In the matter now before the Court, the Plaintiff alleges that the Committee's decision to dismiss him from the residency program, as well as Dr. Bailey's decision to uphold that decision, were based on "factual errors and false allegations." [Doc. 29, ¶23]. However, the Plaintiff does not allege that the Defendants were aware that any of deficiencies set forth in the Termination Letter were false. In fact, it appears that the Plaintiff merely disagrees with the Defendants' decisions and believes that the incidents described in the termination letter are inaccurate. The Plaintiff's personal opinion regarding his dismissal, although different than that of the Defendants', does not establish a violation of his substantive due process rights.

Defendants also note that the Plaintiff's Second Amended Complaint contains allegations that Defendants deviated from "accepted academic norms" and did not "exercise professional judgment" when they decided to dismiss him from the LSUHSC-S residency program. [Doc. 29, ¶¶46, 50]. The Plaintiff has also alleged that Defendants' actions were "so arbitrary that it 'shocks the [conscience]'". [*Id*]. Defendants submit that these are the kinds of allegations recognized by the court in *Twombly*, supra, as merely being legal conclusions couched as facts. As such, Defendants submit that the Plaintiff has failed to allege sufficient facts that, even if taken as true, would be sufficient to state a valid claim for violations of his procedural and/or substantive due process rights under the Louisiana Constitution or the Unites States Constitution.

### B.  Plaintiff's Claims Under 42 U.S.C. § 1983

In his Second Amended Complaint, the Plaintiff states that he is seeking damages against Dr. Lauren Beal, Dr. Ryan Jones, Dr. Sara Adams, Dr. Yemisi Adesida, Dr. Vinh Nguyen, Dr.

Wanda Thomas, Dr. Amanda Callegan-Poche', M'liss Sella, Leisa Ogelsby, Christine Cheney, and Dr. Stephen Bailey for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. [Doc. 29, ¶52-58].  The Plaintiff specifically alleges that each of these Defendants were acting on behalf of LSUHSC-S[2], and under color of state law.  [*Id.*].

Neither a state, nor its officials acting in their official capacities, are "persons" under §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The United States Supreme Court has made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). For these reasons, the Plaintiff's claims against Dr. Lauren Beal, Dr. Ryan Jones, Dr. Sara Adams, Dr. Yemisi Adesida, Dr. Vinh Nguyen, Dr. Wanda Thomas, Dr. Amanda Callegan-Poche', M'liss Sella, Leisa Ogelsby, Christine Cheney, and Dr. Stephen Bailey should be dismissed.

These Defendants are also entitled to qualified immunity, such that the Plaintiff's §1983 claims should be dismissed.  The defense of qualified immunity operates to protect a public official who is performing a discretionary task. *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995). Government officials, performing discretionary functions, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

---

[2]Defendants wish to remind the Court that LSUHSC-S is not an entity in and of itself, but instead, the State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College.

As discussed above, the allegations contained in the Plaintiff's Second Amended Complaint, even if accepted as true, do not establish that the plaintiff's constitutional rights were violated.  To the extent the plaintiff is making a claim against the Board of Supervisors, vicarious liability cannot support a claim under §1983.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007). Instead, only the direct acts or omissions of government officials will give rise to individual liability for a constitutional violation. *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Since there is no allegation of a direct act or omission by the Board of Supervisors, there is no basis for holding it liable for any civil rights violation.

### C. *Plaintiff's Claims for Breach of Contract*

In Claims #1 and #2 of his Second Amended Complaint, Plaintiff alleges LSUHSC-S[3] breached its contractual relationship with him by: (1) terminating him "without sufficient information and/or evidence"; (2) failing to provide him with "any written documentation leading to dismissal", and (3) "improperly denying [him] of his opportunity to proceed with the Appeals Process".[4] [Doc. No. 1-2, p.112-13, ¶39, 43].  To establish a claim for breach of contract, a plaintiff must demonstrate: (1) the defendant's undertaking of an obligation to perform; (2) the defendant's failure to perform the obligation (the breach); and (3) the defendant's failure to perform resulted in damages to the plaintiff. *See Denham Homes, L.L.C. v. Teche Federal Bank,* 2014-1576 (La.App. 1 Cir. 9/8/15), 182 So.3d 108, 119.  In *Dignam v. Chumley*, this Court noted that "[w]hen a complaint makes conclusory statements about the plaintiff's entitlement to relief for breach of contract without supporting such statements with facts that indicate that the claims

---

[3] Plaintiff's breach of contract claims both explicitly state they are claims for breach "by LSU Health".  The individual Defendants are not named in these claims.

[4] Plaintiff asserts two "claims" related to LSUHSC-S's alleged breaches of contract, Claim #1 styled "Declaratory Relief for Breach of Contract by LSU Health" and Claim #2 styled "Damages for Breach of Contract by LSU Health". The two claims are based on the same allegations and therefore, are not addressed separately herein.

are plausible, the court should grant the defendant's 12(b)(6) motion to dismiss." CIV.A. 14-1029, 2014 WL 3542122, at *3 (W.D. La. July 17, 2014) (Hicks, J.). The same result is warranted here as to Plaintiff's breach of contract claims that LSUHSC-S: (1) terminated him "without sufficient information and/or evidence" and (2) failed to provide him with "any written documentation leading to dismissal".

### i.   Termination "Without Sufficient Information and/or Evidence"

Plaintiff first contends LSUHSC-S breached its contractual obligations by "wrongfully terminating" him "without sufficient information and/or evidence". [Doc. 29, ¶¶39, 43]. Dismissal of a House Officer is governed by the GMEC Manual which states, in pertinent part:

> Immediate dismissal may occur at any time without prior notification in instances of gross misconduct or illegal conduct.
>
> Dismissal of a House Officer may occur for but are not limited to any of the following:
>
> - Failure to meet the performance standards of the training program
> - Failure to comply with the policies and procedures of the training program, GMEC, University Health, or other participating sites
> - Failure to comply with regulations of the Louisiana State Board of Medical Examiners
> - Failure to obtain appropriate visa or other appropriate work authorization documents
> - Inability to pass the requisite examinations for license to practice medicine in the United States
> - Illegal, unethical, or unprofessional conduct
> - Conduct that is detrimental to patients, self, or others

[Doc. 29, ¶30; Doc. 29-8, p.3]. Nothing in this language requires LSUHSC-S to have a specified amount or type of information or evidence to dismiss a House Officer. Instead, it simply lists the reasons for which a House Officer can be dismissed. [Id.]. Plaintiff's claim reads a requirement into the GMEC Manual that does not exist.

11

Further, the Plaintiff's pleadings, even if taken as true, demonstrate that LSUHSC-S dismissed him in accordance with the GMEC Manual and had information and evidence to do so. The Termination Letter describes over twenty-five (25) specific instances of the Plaintiff's deficient performance in five separate areas of competency - interpersonal and communication skills, practice-based learning, professionalism, patient care, and systems-based practice. [Doc. 29, ¶16; Doc. 29-2]. As outlined in the Termination Letter, the Plaintiff's deficiencies included, without limitation, (a) numerous incidents of unprofessional behavior, (b) repeatedly failing to abide by the educational requirements of his program, including the timely completion of educational modules and compliance training and attendance at weekly conferences, (c) failure to timely complete medical records, (d) peer evaluations describing him as "rude", "unprofessional", and "very difficult to work with", and (e) refusal to check the program's communication app for updates and important communications. [*Id.*]. These reasons are authorized reasons for dismissal under the GMEC Manual.

The Plaintiff alleges that the decision to dismiss him from the residency program was based on "factual errors and false allegations." [Doc. 29, ¶23]. Based on a thorough review of the Plaintiff's pleadings, including his attached written appeals, it appears instead that, except for a few examples he outright denies, the Plaintiff instead merely disagrees with the characterization of various events as set forth in the Termination Letter and LSUHSC-S's decisions resulting therefrom. [Doc. 29, ¶¶6-15, 18, 21, 26; Doc. 29-3; Doc. 29-5]. Notably, Plaintiff does not deny many of the examples in the Termination Letter but instead proffers excuses for his actions, provides his differing interpretation of events, and even asserts his opinion (as a first-year resident) that certain requirements with which he admittedly failed to comply were inappropriate or not the best use of his time. [Doc. 29, ¶¶21, 26; Doc. 29-3; Doc. 29-5].

The Plaintiff's *disagreement* with the characterization of events and his personal opinion regarding the appropriateness of the program's requirements and communication methods and his dismissal, although different than that of LSUHSC-S, is not sufficient to demonstrate LSUHSC-S's failure to comply with the dismissal requirements of the GMEC Manual or otherwise establish a claim for wrongful termination in violation of LSUHSC-S's contractual obligations.

In addition, although the Plaintiff denies some of the allegations made against him, he admits to many of the others. For example, in addressing the allegations in his March 1, 2021 request for reconsideration, Plaintiff admits "some are factual and I own those" [Doc. 29, ¶21; Doc.  29-3, p.4]. He also concedes "I acknowledge that my interaction with the 7th floor nursing staff in July and August of 2020 was inappropriate". [Doc. 29, ¶21; Doc. 29-3, p.1]. He further admits his "poor communication" in failing to notify his co-intern he had changed the agreed-upon morning report topic they were supposed to be presenting together, making her look bad to their superiors. [Doc. 29, ¶21; Doc. 29-3, p.2]. He admits being late to work on January 10th. [Doc. 29, ¶21; Doc. 29-3, p.5-6]. He also admits to seeing only three patients during his January 13th clinic and arguing with his program director when she spoke with him about his poor time management, telling her the patients really appreciated the extra time he took with them. [Doc. 29, ¶21; Doc. 29-3, p.6]. Nor does he dispute missing a number of his program's required weekly Monday conferences. [Doc. 29, ¶¶8-9,21; Doc. 29-3, p.2-3]. Instead, he contends these absences were mischaracterized - but the alleged "mischaracterization" is simply his personal belief (as a first-year resident) that it was inappropriate for the program director to require him to be called away from patients for these conferences. [Doc. 29, ¶¶8-10,21; Doc. 29-3, p.3]. Similarly, the Plaintiff does not deny refusing to use the messaging app required by his program director for her communication with residents. Rather, he complains about the personal stories and comments

13

commonly shared on the app, offers his opinion that the app is "ill-suited" for the communication of "matters of import", and denounces his program director for not instead agreeing to his suggestion that they use an intra-departmental weekly newsletter for such matters.  [Doc. 29, ¶¶15,21; Doc. 29-3, p.3-4]. The Plaintiff's personal opinions as to the best way to run the program do not excuse his admitted failure to abide by the program's requirements.

The foregoing deficiencies admitted by the Plaintiff, in and of themselves, constitute qualifying reasons for his dismissal under the terms of the GMEC Manual, including but not limited to, "failure to meet the performance standards of the program", "failure to comply with the policies and procedures of the training program", and/or "unprofessional conduct". [Doc. 29, ¶30; Doc. 29-8, p.3]. This is all the GMEC Manual requires for dismissal – a qualifying reason. [*Id.*]. Because Plaintiff's pleadings concede deficiencies that qualify for his dismissal under the terms of GMEC Manual, he has not, and cannot state a plausible claim for breach of contract.

Moreover, even if the GMEC Manual can be read to require notice of deficiencies prior to dismissal, the Plaintiff's pleadings clarify that LSUHSC-S did provide him with such notice.  The Plaintiff had meetings with his program director, Dr. Beal, on September 22 and 24, 2020 to discuss incidents of his unprofessional behavior and failure to adhere to educational requirements. [Doc. 29, ¶16; Doc. 29-2, p.2].  During the September 24th meeting, they formulated a remediation plan for him to start meeting with a Dr. Cogburn to "work on his communication issues and ability to deal with anger and frustration" [*Id.*; Doc.29-3, p.1]. On December 1, 2020, the Plaintiff met with Dr. Beal and Dr. Callegan-Poche to discuss his unprofessional behavior in changing report topics without notifying the co-intern who was to present with him. [Doc. 29, ¶¶16, 21; Doc. 29-2, p.3; Doc. 29-3, p.2]. Thereafter, on December 15, 2020, the Medicine-Pediatrics Clinical Competence Committee placed the Plaintiff on probation and implemented a remediation plan for

14

him to complete. [Doc. 29, ¶16; Doc. 29-2, p. 1, 3; Doc. 29-6, p. 1]. The Plaintiff was notified of the probation and remediation plan that same day. [Doc. 29, ¶¶16, 27; Doc. 29-2, p.3; Doc. 29-6, p.1]. The Plaintiff, therefore, had clear notice of LSUHSC-S's concerns with his deficiencies well in advance of his termination.

Finally, pursuant to the GMEC Manual's Probation Policy, after a House Officer is placed on probation:

> Failure to meet **any** standard after this formal warning may result in serious consequences up to and including dismissal from the program…

[Doc. 29, ¶30; Doc. 29-8, p.3 (emphasis added)]. As articulated in the Termination Letter, after the Plaintiff was placed on probation, he failed to timely complete his educational modules, failed to check the program's communication application for important program information (a failure he admits, as seen above), and continued to exhibit unprofessional behavior and poor interpersonal / communication skills. [Doc. 29, ¶16; Doc. 29-2, p. 3-5]. He also fell far short of his remediation plan's 70% conference attendance requirement (another failure which, as noted above, he freely admits). [Doc. 29, ¶16; Doc. 29-2, p. 4].  Each of these post-probation failures, alone, constitutes "sufficient" reason for dismissal under the terms of the GMEC Manual's Probation policy.

Because the Plaintiff's claim is based on a contractual obligation that does not exist - "sufficient" information and evidence - he has failed to state a plausible claim for breach of contract. Additionally, Plaintiff fails to state a plausible claim for breach of contract because his own allegations and attachments clearly demonstrate that LSUHSC-S dismissed him in accordance with the GMEC Manual and had information and evidence to do so. Accordingly, his claims for breach of contract for wrongful termination without sufficient information and/or evidence should be dismissed.

### ii.   Failure to Provide "Any Written Documentation Leading to Dismissal"

As it relates to his claim that LSUHSC-S failed to provide him with "any written documentation leading to dismissal", the Plaintiff alleges:

> [T]he Termination Letter was also defective as it failed to provide Dr. Logarbo with "any written documentation leading to dismissal" and instead, merely made reference to certain accusations such as general and vague complaints allegedly made against Dr. Logarbo, without providing any documentary evidence whatsoever of said accusations

[Doc. 29, ¶20].[5] The purported contractual obligation referenced by the Plaintiff comes from the GMEC Manual which provides, in pertinent part:

> If at any time the Program Director determines dismissal is warranted, the program director shall notify the House Officer, the DIO, and the Graduate Medical Education office in writing. The Program Director shall also provide any written documentation leading to dismissal.

[Doc. 29, ¶30; Doc. 29-8, p.3]. The Plaintiff apparently reads this paragraph to require that all underlying documentation in any way relating to his dismissal be included with the initial notice of dismissal provided to him.  Plaintiff once again reads requirements into the GMEC Manual that do not exist.

First, nothing in the GMEC Manual's plain language requires LSUHSC-S to provide underlying documentation on which a House Officer's dismissal is based. Rather, it simply requires provision of "written documentation leading to dismissal". [*Id.*]. LSUHSC-S indisputably did just that. As set forth in more detail above, included with the Termination Letter was a more than three (3) page written timeline describing the events and issues that led to the Committee's unanimous decision to dismiss Plaintiff. [Doc. No. 29, ¶16; Doc. No. 29-2]. The timeline describes

---

[5] For purposes of this Partial Motion to Dismiss only, LSUHSC-S will assume, without admitting, that none of the documents underlying Plaintiff's dismissal were attached to the Termination Letter.

16

these events and issues in painstaking detail, by date, explanation, and reference to relevant documents. [*Id.*]. It is: (1) written and (2) documentation of the events and issues that led to the Plaintiff's dismissal. The plain language of the GMEC Manual requires nothing more. Accordingly, Plaintiff's breach of contract claims for failure to provide "any written documentation leading to dismissal" must fail.

Second, even if the GMEC Manual could be read to mandate the provision of underlying documentation, nothing in the GMEC Manual requires LSUHSC-S to provide that documentation along with the notice of dismissal. [*Id.*]. Accordingly, LSUHSC-S's alleged failure to provide documentation <u>with</u> the Plaintiff's Termination Letter is insufficient to support a plausible claim for breach of contract.

Third, although the GMEC Manual requires the Program Director to provide "written documentation", it does not state to whom the documentation must be provided. More specifically, it does not state the written documentation must be provided <u>to</u> the House Officer. Thus, LSUHSC-S's alleged failure to provide the documentation to the Plaintiff is insufficient to support his breach of contract claim.

**IV.    <u>CONCLUSION</u>**

Based upon the foregoing legal authority and discussion, the plaintiff's claims against the Defendants for:

(1) Declaratory Relief for Breach of Contract by LSUHSC-S based on LSUHSC-S's termination of Plaintiff "without sufficient information and/or evidence";

(2) Damages for Breach of Contract by LSUHSC-S based on LSUHSC-S's termination of Plaintiff "without sufficient information and/or evidence";

(3) Declaratory Relief for Breach of Contract by LSUHSC-S based on LSUHSC-S's failure to provide Plaintiff with "any written documentation leading to dismissal";

(4)  Damages for Breach of Contract by LSUHSC-S based on LSUHSC-S's failure to provide Plaintiff with "any written documentation leading to dismissal";

(5)  Declaratory Relief for Violation of Louisiana Constitutional Rights;

(6)  Declaratory Relief for Violation of U.S. Constitutional Rights; and

(7)  damages pursuant to 42 U.S.C. § 1983

should be dismissed, with prejudice, and at plaintiff's costs pursuant to Federal Rules of Civil Procedure 12(b)(6).


Respectfully submitted,


JEFF LANDRY
Attorney General

By: _/s/Patrick W. Woolbert__
Patrick W. Woolbert (#34998)
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
330 Marshall Street, Suite 777
Shreveport, LA  71101
Telephone: (318) 676-5706
Facsimile: (318) 676-5703

COUNSEL FOR DEFENDANTS

WIENER, WEISS & MADISON
A Professional Corporation

By: _/s/ Marjorie L. Frazier_
Marjorie L. Frazier (#32991)
Reid A. Jones (#34611)
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA  71120-1990
Telephone:  (318) 226-9100
Facsimile:   (318) 424-5128

COUNSEL FOR LSUHSC-S

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 27, 2022, a copy of the foregoing *Memorandum in Support of Partial Motion to Dismiss Pursuant to FRCP Rule 12(b)(6)* was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent electronically to all counsel of record by operation of the Court's CM/ECF System.


_____*/s/Marjorie L. Frazier*_____
Marjorie L. Frazier (LSBA # 32991)